The facts of the case, and the questions raised and decided, . appear in the opinion of the court, which was delivered by
Whitehead, J.
This action was brought to recover certain goods and chattels, taken from the plaintiff by the defendant on the 5th day of June, 1843. The defendant pleaded property in the goods. On the trial of the cause, it appeared that William H. Backus and Luther E. Backus, for some time prior, and up to January, 1843, had been engaged at Newark in the manufacture and sale of tin ware, under the firm of Backus & Brother. That in January 1843, the plaintiff became associated with them in' the business, under the style and firm of Backus, James and Co. They had a store in New York where the plaintiff resided, and a manufactory and store in' Newark. On the 26th of May 1843, Wm. H. and L. E. Backus executed, in the city of New York, to the plaintiff, a bill of sale for all their interest in the said firm; and received therefor four promissory notes for $1250 each, at twelve, eighteen, twenty-four and thirty-six months, respectively, without interest. The partnership was dissolved, when the bill of sale was executed ; and public notice of dissolution was given May 31st, 1843. The business was conducted by the plaintiff down to the time of the trial. Neither William H. nor L. E. Backus had any interest in it, after the sale to the plaintiff. The copartnership formed between the parties in January, 1843, was for the term of three years. The business was a changing one, work going out and coming in. *637 The amount of property in the concern was about the same on the 5th of June, the time of the levy hereinafter mentioned as it was on the 26th of May, the date of the bill of sale to the plaintiff. The value of the stock was variously estimated from $3000 to $5000.
On the 5th of June 1843, the defendant, as sheriff of the county of Essex, levied on the property described in the declaration, at Newark; and took possession, by virtue of an execution issued out of the Supreme Court, upon a judgment recovered on the 9th day of May 1843, by the Mount Vernon Bank against the said L. E. and William II. Backus. It was for taking of the goods under the execution, that this action was brought. The execution was delivered to the sheriff on the 9th day of May 1843, and remained in his hands until the levy was made. On the 9th day of May or the day following, the defendant called at the place where the Messrs. Backus and the plaintiff were doing business, and informed one of the two former, that he had an execution against them, and asked what was to be done with it. He was told, that Mr. Backus would see Mr. Frelinghuysen, the plaintiff’s attorney. He went away without making a levy. Mr. Backus and Mr. Frelinghuysen made and entered into an agreement in reference to the execution which, after naming the case, continued as follows :
“ May 17,1843 — The defendants, in the above stated suit having paid on the said judgment one hundred and thirty-eight dollars and eighty-seven cents; and having given to said plaintiffs their four several promissory notes, all dated May 9th, 1843,— one payable in the sum of one hundred and thirty-nine dollars and seventeen cents, on the 1st of June next; one in the sum of one hundred and forty-one dollars and twenty-four cents, on the 1st of September next; one in the sum of one hundred and forty-three dollars and thirty one cents, on the 1st of December next; and the other in the sum of one hundred and forty-five dollars and thirty-eight cents, on the 1st of March next; each of the said notes being given for the one-fifth of the amount of damages by said judgment recovered, together with the interest thereon, from the date of said judgment; and the said defendants having also given their note to the plaintiff’s attorney for the taxed costs *638 payable. July 20th, 1843. Now therefore, the said plaintiffs hereby agree to stay all proceedings on the execution, issued on said judgment; and to take no further proceedings thereon, provided all the sai<l notes are paid at maturity; and provided their execution is not pressed by other executions or process, coming against the property of the defendants ; and provided there is not good reason for the plaintiff to believe, that the property of the defendants is about to be placed beyond the reach of the execution or their said judgment. It being understood, that the said defendants shall also pay all costs due,' or that shall become due, to the sheriff by reason of said execution.”
The first payment mentioned in the agreement being a cash payment, was made at the time the' agreement was executed; but no other payment was ever made. Luther E. Backus in his testimony alleged as the reason why the note, which became due in June 1843, was not paid, was, that Mr. Erelinghuysen, on being apprised of the sale to James before the note became due, signified to the witness that he did not feel himself bound by the agreement, and should cause a levy to be made. It further appeared on the trial, that some of the things levied on were manr ufactured prior to (he execution of the bill of sale to the plaintiff, and some afterwards; that a portion of the articles were manufactured of stock purchased, and brought into the concern, after the execution of the bill of sale. The raw material on hand at that time was about the usual quantity, and was pretty much worked up by the 5th of June, when the levy was made. There was also evidence by two witnesses, and not contradicted, that twelve boxes of tin plate levied on, of the value of $8 to $10 per box, were purchased and brought in after the bill of sale, and taken by the sheriff.
There was other evidence upon the question of fraud in the sale to the plaintiff, but not being material to the questions of law, raised upon the trial of the cause, and argued before us up>on the application for a new trial, it is not necessary to detail it.
The plaintiff claims the property under the bill of sale made to him by the Messrs. Backus, on the 26th of May. The defendant justifies the taking under the execution delivered to him as sheriff on the 9th of May, and the levy under it on the 5th of *639 June following. The goods of a defendant in execution are bound from the delivery of the writ to the sheriff, even against subsequent bona, fide purchasers. 1 Southard 382; 1 Archbold’s Pr., 295, unless they are sold in market overt, or under circumstances, which ‘in this state would be equivalent thereto, 2d Eq. Cases Ab. 381; Buller Nisi prius 91. The lien attached to all the goods in question, notwithstanding the partnership existing, at the time of the delivery of the writ to the sheriff, between the Messrs. Backus and the plaintiff Mr. James. For, by virtue of the writ, the sheriff could seize and levy upon the interest, of the defendant, in the whole of the partnership property ; and that interest alone, be it more or less, he could sell upon the execution, Story on Partnership, 373. This lien continued up to the time of the levy, unless it was destroyed by the agreement of the 17th of May, between the defendants in execution, and the attorney for the Mount Vernon Bank, the plaintiffs therein. The plaintiff's counsel contend, that by interfering with the execution of the writ, and granting the delay, the plaintiffs in execution lost their lien upon this property as against third persons, bona fide purchasers, although it might remain as against the defendant.
The first question therefore is, as to the proper construction and legal effect of the agreement, so far as it may affect the lien upon the goods in question. The judge at the circuit gave to this writing a proper construction, and was, in my opinion, right in his views of its legal effect and its ‘operation upon the right, of the parties. In his charge to the jury he says, “ the just construction of this writing is, that, in consideration of the money paid and notes given, the plaintiffs agreed to stay all proceedings on the execution, provided all the notes were paid at maturity; or until the defendants should be pressed by other process or executions coming against their property; or until there should be good reason for the -plaintiffs to believe, that the property of the defendants was about to be placed beyond the reach of their ¡.execution. This I take to be the just construction of the writing, and its true meaning; and according to this writing, the plaintiffs had a right to proceed on their execution if they could find any property of the defendants, W. H. and L. E. Backus to levy on, *640 for two reasons ; 1st, because the first note had not been paid at maturity ; ^and 2dly, because the transfer of their interest in the firm of Backus, James & Co., to James, was good reason for the plaintiffs to believe that the defendants were putting their property beyond the reach of the execution.
The judge further instructed the jury, “that the agreement did not suspend or discharge the lien, and consequently, with whatever motive James took the bill of sale for the goods, he took it subject to the lien, and cannot recover in this action upon the ground, that the lien was discharged.
The agreement was not made at the instance of the plaintiffs, or for their benefit, as there was, at the time the execution came to the sheriff’s hands, a sufficiency of property of the defendants whereon to levy and make the money; nor can it be pretended under the evidence, that it was made to hinder, delay or defraud creditors. It was a lawful agreement, made in good faith by the plaintiff’s attorney and for the commendable purpose of preventing any injury to the defendants, by the immediate action of the sheriff under the execution. The plaintiffs in execution did not, by their agreement, withdraw the execution from the sheriff’s hands, or abandon or agree to abandon or surrender their lien under it; nor do I believe after a careful examination of the writings that the Messrs. Backus at the time so understood it. By agreeing to stay proceedings, the plaintiffs simply agreed to suspend or defer any action under the execution for a time, and that for the relief of the defendants. The argument of the plaintiff’s counsel, that by the agreement to stay proceedings, the plaintiffs in execution lost their lien upon the goods, is founded upon the strict and rigid rules of the common law upon this subject. But these rules we have never adopted in this state, 7 Halsted 285. I think it may be safely laid down as a rule, that whatever conduct or interference on the part of a plaintiff in execution, in delaying proceedings after levy, would be considered fraudulent as regards a junior execution and would be sufficient to give to the younger execution a priority, would be suffie.ent to destroy the lien which is created by the mere delivery of the writ to the sheriff, as against bona fide purchasers. For the lien exists before, as well after, a levy has been made. By the levy, *641 tlie sheriff is considered as taking possession, so as to enable him to maintain trespass or trover. Row it was decided by this court in the case of the Cumberland Bank v. Hann, 4 Harrison 166, that “ the plaintiff when he delivers his execution to the sheriff, or at any time afterwards, may direct the sheriff not to proceed to a sale, without further order from him, or unless urged on by younger executions, without thereby losing his priority, provided the same be done in good faith.” If this proposition be correct, then I cannot see upon what principle we can say, that the agreement to stay proceedings in this case, made in good faith, for the relief of the defendant in execution, and without any design to prejudice other creditors, should be adjudged fraudulent in law as against bonajide purchasers. In nay opinion, the lien continues notwithstanding the agreement; and the sheriff, in the event of a failure by the defendants to comply with its terms, could legally levy upon all the property in their possession at the time the execution came to his hands.
Another exception to the proceedings on the trial is, that the judge shifted the burthen of proving what goods in the store at the time of the levy had belonged to the Messrs. Backus before the sale, and what had been brought in by James afterwards, from the defendant in this case, upon whom it is alleged the burthen rested, to the other party. The complaint is, that the plaintiff was required to distinguish by proof, what articles he had brought into the establishment after the sale to him. The charge of the judge, upon this part of the case, is as follows: “Admitting for the sake of the argument, that the lien continued, or that the bill of sale was fraudulent, yet the bill of sale as between James and the Messrs. Backus was valid; so that in either case, James owned the whole establishment, subject so far as the Backus’ interest extended, to this execution. Hence it is argued by the plaintiff’s counsel, that if the sheriff has seized any of the goods that were afterwards brought into the store by James, and that never belonged to the firm of Backus, James & Co., the plaintiff is entitled at all events to your verdict for such articles so afterwards brought into the store. This is a correct proposition. But then the onus probandi, the burthen of proof, lies on the plaintiff under the pleadings in this cause; he *642 must satisfy you by evidence, not only that some of the property seized by the sheriff was the exclusive property of the plaintiff, but he must show what part of the property belonged to him. He must point it out, and enable you to name and specify it in your verdict.” Aside from all questions arising upon the pleadings in the cause, I think the judge was right in requiring the plaintiff to distinguish by proof what specific articles were his exclusive property, and brought into-the store after the sale to him. ' For, if I am right with respect to the first point made in the cause, that the execution was a continuing lien upon all the goods in the store, from the time of its delivery to the sheriff to the time of the levy, notwithstanding the agreement referred to, then the purchase by the plaintiff was subject to this lien. And if, after the sale to him, he intermixed his own goods with those subject to the lien of the execution, it is for him to prove what goods he brought in and were exempt from the lien, and not for the sheriff to prove what portion of the old stock remained at the time of the levy. The execution had been regularly issued, and placed in the hands of the proper officer; and was in law notice to him of its lien upon the store of goods. Whatever he did in relation to the property by purchasing, or in adding new stock, he is presumed in law to have done so with notice of the execution • and as it was his act, and not by any agency of the sheriff, that the goods were intermingled, it is for him to make the discrimination ; and in requiring this proof of the plaintiff, the judge imposed upon him no difficult task, as he was only in the exclusive possession of the store for nine days, his bill of sale being dated on the 26th day of May, and the levy being made on the 5th of June following.
So far as regards the questions of law involved in the case, the plaintiff has no ground to complain of the instructions the judge gave the jury. The verdict however cannot be sustained, as it is against the evidence in the cause. There was evidence by two witnesses, and not contradicted, that twelve boxes of tin plate, levied on and taken by the sheriff, were purchased by the plaintiff, and brought into the store after the sale. This evidence pointed out clearly this property as being exclusively the plaintiff’s and not subject to the lien; and he was entitled to a verdict *643 for it, under the charge of the judge. Upon this ground the verdict must be set aside, unless, as was suggested upon the argument, the defendant will'remit the twelve boxes of tin plate which was proved to have belonged to the plaintiff.
Hobnblower, C. J. and Randolph, J. concurred. The other Justices did not hear the argument and expressed no opinion.
Cited in Caldwell v. Fifield, 4 Zab. 155; Allen v. Agnew, Id. 447.